## John Gould v. John H. Whitman et al.

The proprietors of Newport township having in 1701 voted " that school land be laid out in the common called Lintall's Plain, six acres, for the benefit of the proprietors in that part of the township, and that six acres more be laid out for the like use, in the common beyond Daniel Gould's land, for the benefit of the proprietors in that part of the town;" and that portion of the territory of Newport in which said lands were situate, having in 1743 been set off and incorporated as the town of Middletown; and it appearing that for sixty-nine years (including the period from 1819 to 1853,) of the ninety-nine, since the town of Middletown assumed control of said lands, the income from one of said lots had been apportioned exclusively to one of the five several school districts of the town: *Held*, That the usage and practice under said vote of the proprietors, had been consistent with the natural construction to be put upon it, standing alone; and that a decree of the Town Council of Middletown in 1853, ordering thenceforth a distribution of the incomes from both of said lots among the several School Districts, irrespective of localities, as being more conformable to the charitable intent of the grantors, was erroneous, and must be reversed and annulled.

This was an appeal from a decree of the Town Council of Middletown, passed in compliance with a petition or memorial of the appellees, setting forth that the incomes from certain school lands lying in that town were not appropriated and enjoyed according to the charitable intent of the grantors. The appeal was heard by the court at the August term, 1855, and held for advisement until this term.

The vote of the proprietors referred to in the Court's opinion, was of the " 11th of February, 170½," and was " that school land be laid out in the common called Lin-tall's plain, six acres, for the benefit of the proprietors in that part of the township, and that six acres more be laid out for the like use, in the common beyond Daniel Gould's land, for the benefit of the proprietors in that part of the town; and if each parcel be not put to the use above said, then the income to go to the maintenance of the poor till put to that use." The other material facts of the case are stated in the opinion.

*H. Y. Cranston* and *Ames* for the appellees and in support of the decree, contended first, that the intent of the donors was that the town council should manage the lands in question as they should see fit; and that the usage and practice, as proved in this case, shows that such has been and should be the construction of the grant. But, secondly, assuming that the donors intended to appropriate the two lots in question to distinct portions of the township, as they designated no territorial line, equity requires that the income from both be apportioned ratably among all the school districts of the town, as provided in the decree appealed from. Citing *Baker* v. *Fales*, (16 Mass. 496–7.) *Green* v. *Putnam*, (8 Cush. 27–8.)

*W. H. Potter*, for appellant, contra: and denying that the Town Council of Middletown, incorporated in 1743, has any power over these lands, which the proprietors of Newport, in 1701, laid out or appropriated by the vote in evidence.

BY THE COURT.—This case comes up by appeal from the decree of the town council of the town of Middletown, under and by virtue of an act entitled " an act to redress misemployment of property given to certain charitable uses," (Dig. 1844, p. 208.)   The act provides that " whenever real or personal property, or the use, issues or profits of any, have been or shall be given, limited, appointed and assigned by any person to and for the relief of the poor or the bringing up of children to learning, or for any other specific purpose, and have not been or shall not be employed according to the charitable intent of the giver and founder thereof, it shall and may be lawful for the town council of each town within its respective jurisdiction to inquire of and concerning the same," &c.   Section 2 provides that said town councils, after notice to the parties entrusted with such real or personal property, may set down such orders, judgments and decrees in relation thereto, as the exigency of the case may seem to require.

The petitioners allege, that the town of Middletown has long been in possession of two certain tracts of land of about six acres each, viz : the tract in the south part of the town, bounded east on highway, south on the Whitehall farm, so called, west on land of John Barker, and north on land of Nathaniel and James Wyatt, and now in the possession of Peleg T. Sherman ; the tract in the north part of the town, bounded south and west on highways, north on land of Joshua Coggeshall, east on land of Daniel Chace, and now in the possession of George C. Coggeshall ; that said lots have always been applied to the support of schools ; that no controversy has ever existed as to the proper design or object to which the profits of them should be applied ; but contro-

versies have long existed as to the mode in which they should be managed, and the mode in which the profits or income should be apportioned among the different parts of the town; that for many years past the south lot has been managed by the school committee of the town, and the income applied to the support of schools in districts No. 2, 3, 4 and 5 in said town, and the north lot is managed by school district No. 1, and its income applied to the support of schools in that district alone. And the petitioners believe that this present management and apportionment of the profits of said land is not according to the intention or purpose for which the land was appropriated, but is a misemployment thereof.

The petitioners contend that each of these lots was intended for the use of all the inhabitants of the town of Middletown, and inasmuch as the incomes of the west lot are now applied exclusively for the benefit of the inhabitants of district No. 1, to the exclusion of the inhabitants of the other districts of the town, it is a misapplication requiring to be corrected.  The respondents, on the other hand, claim that the west lot, lying within district No. 1, being that laid out upon Lintall's plain, was intended by the proprietors to be for the use of the inhabitants of that district only, and the southern lot, a lot set out from the common beyond Daniel Gould's, was to be for the separate use of another distinct district there.

The petitioners have, in their petition, set forth the evidence upon which they rely, viz : the vote of the proprietors of Newport, taken from their records, and certain acts of the town of Middletown, directing the mode of managing these lands and the application of the incomes thereof.

The respondents in reply, put in evidence from the proprietors' records, that another lot of six acres, lying in another part of the township, and within the present limits of the city of Newport, was set apart by the proprietors for school lands, for the use of the proprietors in that part of the township. The respondents also proved, that from the year 1819, and down to the filing of this petition, the inhabitants of the present district No. 1 have been in the control exclusively of the lot in Lintall's plain, and in the receipt of the issues and profits to their own use for school purposes; that this district, as now constituted, is substantially the same as the squadron lying west of the dividing line described in the vote of the town of April 17, 1754.

Taking the acts of the proprietors, as they appear upon these records, there seems no reasonable doubt as to the class of individuals to whose use this lot was devoted. Both lots could not have been intended for the same set of proprietors, but each lot for a different set—for the use of the proprietors of different districts, different parts of the township.

We think this is quite clear, from the terms in which the proprietors set them apart, and the description of the place in which the lots are to be located. One is to be laid out in the common called *Lintall's plain*, and it is to be for the benefit of the proprietors in *that part* of the township. What part of the township? There is but one answer, viz: in that part in which is the common called Lintall's plain.

The other lot of six acres, for the like use, (i. e. for school land,) is to be laid out in the common beyond Daniel Gould's land, and this is to be for the benefit of

the proprietors in *that* part of the town. Here another part of the township, distinct from Lintall's plain, is referred to and described. It is the common beyond Daniel Gould's, and not the common on Lintall's plain. The proprietors in that part of the town, also, are to have the benefit of a six acre lot for school purposes. These are different parts of the township of *Newport.*

It is contended that the practical cotemporaneous construction of this act of the proprietors was otherwise; and much stress has been laid upon the proceedings of the town of Middletown, after its incorporation in 1743, in assuming from time to time to direct in what way the school land thus set apart should be managed, and the incomes applied.

Here it may be proper to suggest that our inquiry is not now as to the individual or body corporate who ought to manage this charity and dispense it, but whether it is dispensed to those for whom it was intended by the givers.

It does not appear how these lands were managed, by whom, or how the incomes and profits were applied, if applied at all, prior to 1754, a period of fifty years after they were surveyed and located,—whether according to this intent or otherwise. But the town, at a meeting held April 17, 1756, voted that the late method of managing the two schools be altered, and that for the future they be managed as follows : that the town be divided into two squadrons, and that each squadron shall have the sole power of managing its own school houses and lands, and employing schoolmasters, and to fix the dividing line between the two districts. It does not appear how otherwise than in the mode now provided, the lands had been managed or the profits applied.

If the income of the one had been before then applied to the benefit of the other district, whereby the funds were diverted for a time from the original intent, and the purpose had been to conform to the intent of the givers more strictly, this act of the town was precisely that which would effectually accomplish the purpose. If this were not one of the purposes of the act of the town, then we may presume that the funds had all the while been ·devoted according to the intent of the giver, by applying the income of the lots to the district in which they respectively lie.

From this time down to the act of the town of May 27, 1789, the incomes of each lot continued to be applied to the use of the district in which it was located. By this act, the vote of April 17, 1754, was wholly repealed, as well that part dividing the town into two squadrons, as that which directed that each district should have the power of leasing the school land within it. This last act, it will be seen, does not direct that the incomes of these lots shall be applied to the support of schools for the education of all the children of all the citizens and inhabitants of the town of Middletown, as it is now claimed that they should be, and as the decree below requires; but on the contrary, although to be applied indiscriminately to the two districts, are yet to be applied to the schooling of poor children only, to the exclusion it may be of all the proprietors, and at least all such as are not poor.

How the schools were managed, and· how the incomes were applied, from this time down to June 2, 1807, does not appear by any testimony before us. But at that time, eighteen years from the passage of the vote of

1789, it is quite evident that that vote, if it had at any time controlled these incomes, had ceased to do so. It had become a dead letter.

At this time the town appoint a committee to inquire " how the east and west school land now stands." The committee, referring to the votes of the proprietors of Newport, and the votes of the town, report their opinion that both lots " stand upon the same footing," without stating clearly or absolutely what that footing was. Here the inquiries dropped—nothing was settled—and no further act of the town appears.

For the subsequent period of eleven years, we are still without any evidence as to the mode in which the incomes were applied.

The first definite and clear evidence which we have, is in 1819, in March, when we find from the records of their proceedings, the district now No. 1, leasing the lot in that district, and receiving the incomes to its own use. This control of district No. 1 has continued down to the filing of this petition, on the 2d of June, 1853, a period of thirty-four years, from anything that appears, without objection from any quarter. So that, taking the two periods, viz: the one from 1754 to 1789, and this last, from 1819 to 1853, we find district No. 1 in the receipt of the incomes of the west lot for a period of sixty-nine years out of the ninety-nine since the town assumed to control them.

For the residue of that period there is an absence of evidence as to the application in point of fact, and certainly we are without proof that for any considerable portion of time since the first votes of the proprietors

John Gould *v.* John H. Whitman et al.

in 1702, the incomes have been applied in any other mode.

We do not perceive, therefore, anything in the votes and acts of the town of Middletown, or of the proprietors of these districts themselves, to vary the natural construction to be put upon the votes of the proprietors of Newport standing alone, but on the contrary, so far as they go they tend to confirm that construction. We are, therefore, of opinion that the application of the incomes of the west lot for the maintenance of schools in district No. 1 only, is not a misemployment of the incomes, but is according to the charitable intent of the givers.

*Appeal sustained, and judgment accordingly.*